UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**JAMES HARVEY, JR.,**

                                   **Petitioner,**

                vs.                                  9:01-CV-1116 (NAM)

**HANS WALKER, Superintendent,**

                                   **Respondent.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

JAMES HARVEY, JR.
96-B-765
Auburn Correctional Facility
135 State Street
P.O. Box 618
Auburn, New York 13024
Petitioner *pro se*

HON. ELIOT SPITZER
Attorney General of the State of New York
MARIA MORAN, Esq.
Assistant Attorney General
Suite 102
615 Erie Boulevard West
Syracuse, New York 13204
Attorney for Respondent

**Norman A. Mordue, D.J.:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Petitioner, an inmate in the custody of the New York State Department of Correctional Services, is serving a sentence based on his conviction for manslaughter, first degree, after a jury trial. He brought this proceeding for habeas corpus, asserting ineffective assistance of trial

and appellate counsel, prosecutorial misconduct and judicial bias and error at trial. Petitioner's application was referred to United States Magistrate Judge Gustave J. DiBianco for a Report-Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.4.

In his Report and Recommendation, Magistrate Judge DiBianco recommends denial and dismissal of the petition. Petitioner submits a three-page general objection. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court conducts a *de novo* review of those parts of a magistrate judge's report-recommendation to which a party specifically objects. Where only general objections are filed, the Court reviews for clear error. *See Brown v. Peters*, 1997 WL 599355,*2-*3 (N.D.N.Y.), *aff'd without op.*, 175 F.3d 1007 (2d Cir. 1999). Failure to object to any portion of a report-recommendation waives further judicial review of the matters therein. *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993).

## BACKGROUND

On March 20, 1996, after a jury trial, petitioner was convicted of manslaughter, first degree, in Onondaga County Court, stemming from the beating death on August 2, 1995, of Yvonne Sullivan, his live-in girlfriend. Petitioner was sentenced to 12½ to 25 years imprisonment. Onondaga County Court denied petitioner's C.P.L. 440.10 motion to vacate his conviction on June 24, 1998, and, on reconsideration, on August 4, 1998. The Appellate Division, Fourth Department, denied leave to appeal the 440.10 decisions on September 30, 1998 and October 21, 1998, and the Court of Appeals dismissed petitioner's application for leave to appeal the Appellate Division's September 30, 1998 order.

The Appellate Division affirmed petitioner's conviction, and the Court of Appeals denied leave to appeal. *People v. Harvey*, 706 N.Y.S.2d 562 (4th Dep't 2000), *leave to appeal*

*denied*, 95 N.Y.2d 835 (2000).  The Appellate Division denied petitioner's motion for a writ of error *coram nobis* on the ground of ineffective assistance of appellate counsel.  *People v. Harvey*, 726 N.Y.S.2d 43 (4th Dep't 2001).

In his petition for habeas corpus, petitioner raises the following issues:

1. Ineffective assistance of trial counsel;

2. Prosecutorial misconduct and trial court bias and error; and

3. Ineffective assistance of appellate counsel.

Magistrate Judge DiBianco's Report and Recommendation sets forth an excellent, detailed summary of the lengthy trial transcript, which is incorporated by reference herein. Briefly, testimony established that at around 9 a.m. on August 2, 1995, in response to a 911 telephone call, ambulance personnel went to the apartment shared by petitioner and Sullivan. Petitioner admitted them to the apartment where they found Sullivan dead on the bed in the bedroom.  Petitioner gave inconsistent explanations to the paramedics.

When police arrived at the apartment, a paramedic notified an officer that Sullivan's death was "suspicious."  Police transported petitioner to the police station where, on the evening of the same day, he made statements to the effect that Sullivan had been "messing around"; that he was angry because when he came home from work there was either a used condom or a condom wrapper on the floor; that he had struck and kicked Sullivan on the night of August 1; and that he had found her dead in the morning.  Sometime after 9 p.m. on August 2, petitioner signed a written statement.

Medical evidence showed that Sullivan died from internal bleeding due to multiple liver lacerations resulting from blunt force trauma.  There was evidence from Sullivan's family and

neighbors that petitioner had previously beaten Sullivan a number of times; that at around 9 or 10 p.m. on August 1, petitioner, who was carrying a bat, stated that Sullivan would not be "playing around" any more; that in the early morning of August 2, petitioner was seen carrying a bat and talking to himself about something he had to do; and that about five days before Sullivan's death petitioner had stated that he sometimes lost his temper and was afraid he might kill her.

Forensic evidence established that a condom wrapper was recovered from the bedroom. Police testified that no condom was found. A test for the presence of semen on the body was negative. Human blood was detected on the bedroom wall, on petitioner's shoes and on a baseball bat found in the living room, but there was no evidence regarding whose blood it was.

Petitioner did not take the stand. The theory of the defense was that someone else had killed Sullivan. Petitioner sought to introduce the testimony of Kimberly Johnson that she heard Cicero Dixon make an incriminating statement. After hearing an offer of proof *in camera*, the Court excluded the proffered testimony as hearsay, after finding that Dixon's alleged statement was not a declaration against penal interest. Petitioner also elicited the testimony of Timothy Kelly, who had seen Dixon on the night of the killing, but the Court would not permit Kelly to testify to Dixon's statements.

### DISCUSSION

As noted, where, as here, only general objections to the Report and Recommendation are filed, the Court reviews for clear error. In any event, on review of the record, the Court concludes that, even upon *de novo* consideration, the Report and Recommendation is correct in all respects.

As Magistrate Judge DiBianco explains in his Report and Recommendation, the standard of review to apply on habeas review of a state court adjudication depends upon whether the state court considered petitioner's constitutional claims "on the merits." The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, provides in subdivision (d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Where, however, the state court has not adjudicated a claim "on the merits," the pre-AEDPA standard of review applies. Under pre-AEDPA standards, a state court's factual findings are presumed correct, and pure questions of law and mixed questions of law and fact are reviewed *de novo*. *See Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

**Ineffective assistance of trial counsel**

On his CPL 440.10 motion in County Court, petitioner contended that he received ineffective assistance of trial counsel. County Court considered and rejected this contention on the merits.[1]

In order to prevail on an ineffective assistance of counsel claim, petitioner must show

---

[1] Arguably, County Court's decision may be read to suggest that some issues were not decided on the merits by County Court but rather were left to the appellate court; in any event, regardless of whether the AEDPA standard or the pre-AEDPA standard is applied, the result is the same.

both (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that absent counsel's errors the results of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Under AEDPA, in reviewing County Court's conclusion on the merits that petitioner failed to meet the *Strickland* standard, this Court must consider whether County Court's rejection of petitioner's ineffective representation claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); *see Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001).

In support of his claim of ineffective assistance of trial counsel, petitioner contends that counsel erred in failing to object to the admission of a "false rap sheet." As noted by Magistrate Judge DiBianco, there is no evidence that any "rap sheet" was admitted at trial. While it may have been admitted at sentencing, petitioner, who was sentenced as a second felony offender, did not dispute the fact of his prior conviction; accordingly, the "rap sheet" is irrelevant and, even if admitted at sentencing, could not have prejudiced petitioner.

This Court agrees with Magistrate Judge DiBianco and County Court that there is no merit to petitioner's contentions regarding a condom which he alleges was found in the bedroom. As noted, police testified that no condom was found. Even if a condom had been found, tested, and shown not to bear petitioner's DNA, such proof would not tend to exonerate petitioner in view of the evidence that he killed Sullivan because he was angry at her for "playing around." Likewise, petitioner's contention that the autopsy report was "fraudulent" or "altered" is wholly unsupported.

Finally, petitioner's argument that his trial attorney failed to interview a witness named

"Manwala" is entirely lacking in support; there is no basis to believe that such a person exists, let alone that he or she possessed evidence favorable to petitioner.

As Magistrate Judge DiBianco stated, a review of the transcript demonstrates that petitioner received adequate representation. There is no basis to find that counsel's representation fell below an objective standard of reasonableness. Moreover, particularly in view of the overwhelming evidence against petitioner, there is no reasonable probability that absent counsel's alleged errors the results of the proceeding would have been different. This Court adopts Magistrate Judge DiBianco's discussion of this issue and his conclusion that petitioner has wholly failed to demonstrate his entitlement to relief on this ground.

**Prosecutorial misconduct and trial court error**

Magistrate Judge DiBianco has provided a thorough and excellent analysis of petitioner's claims of prosecutorial misconduct and trial court error. As Magistrate Judge DiBianco observes, there is in fact no evidence of prosecutorial misconduct. In view of the strong evidence of guilt and the lack of evidence of misconduct, petitioner cannot prove that he suffered "actual prejudice" – *i.e.*, that the conduct complained of "had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). The Court adopts Magistrate Judge DiBianco's analysis of this issue.

Likewise, the Court adopts Magistrate Judge DiBianco's discussion of the allegations of trial court error and bias. Except for the claim of bias, petitioner raised all of these issues on direct appeal and the Appellate Division decided them all on the merits. Thus, except for the claim of bias, this Court reviews the issues under the AEDPA standard of review. As Magistrate Judge DiBianco discusses, petitioner fails to show that the state court's handling of

the issues "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

With respect to the claim of trial court bias, to the extent that it is based on the claim of improper jury selection, the Court adopts Magistrate Judge DiBianco's discussion of that issue. To the extent that the claim of trial court bias is based on evidentiary rulings, the rulings in question do not render the trial fundamentally unfair, nor do they otherwise rise to the level of a constitutional violation. *See generally Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998). To the extent that the claim of trial court bias is based on issues not raised in state court, it is unexhausted; however, there is nothing in the record to suggest trial court bias and the Court rejects the claim of trial court bias on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**Ineffective assistance of appellate counsel**

In considering petitioner's claim that he was denied effective assistance of appellate counsel, the Court applies the *Strickland* test, that is, the Court considers whether counsel's representation fell below an objective standard of reasonableness and whether there is a reasonable probability that absent counsel's errors the results of the proceeding would have been different. *See Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir. 1990). The Court approves and adopts Magistrate Judge DiBianco's discussion of this issue.

## CONCLUSION

It is therefore

ORDERED that the Report and Recommendation of United States Magistrate Judge Gustave J. DiBianco is approved and adopted in all respects; and it is further

ORDERED that the petition is denied and dismissed on the merits.

IT IS SO ORDERED.

August 5, 2005
Syracuse, New York

*Norman A. Mordue*
Norman A. Mordue
U.S. District Judge